UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL TAYLOR,<br><br>  Plaintiff,<br><br>  v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>  Defendant. | No. 2:20-cv-00655-KJM-DMC<br><br><br><br>ORDER |

      Defendant Costco Wholesale Corporation ("Costco") moves to dismiss plaintiff Paul Taylor's complaint. Mot., ECF No. 7. The motion is fully briefed. Opp'n, ECF No. 10; Reply, ECF No. 11. Defendant requested judicial notice of a number of documents. "RJN", ECF No. 9.[1] Plaintiff filed a notice of supplemental authority. ECF No. 21.[2] The court submitted the motion on the papers and resolves it here.

---

[1] The court denies the request, as the documents it covers are not relevant to the court's resolution of the motion. *See, e.g., Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (district court may deny request for judicial notice where facts not relevant to question at issue).

[2] In that case, *Weeks v. Home Depot U.S.A., Inc.*, No. 19-6780, a district court in the Central District of California denied in part and granted in part defendant's motion to dismiss a substantially similar complaint alleging an "unfair" UCL claim for a retailer's sale of Roundup. That court granted the motion with leave to amend on other grounds than those the court relies on here.

I.     BACKGROUND

In this putative class action, plaintiff sues Costco, a retailer, for selling Roundup, a weed killer containing an allegedly cancer-causing chemical, glyphosate.  Compl. ¶¶ 1–2, ECF No. 1.  Monsanto, the manufacturer of Roundup, is not a party to the case.  Plaintiff purchased Roundup twice from a Costco store in Shasta County.  *Id.* ¶ 79.  Defendant did not provide any information that Roundup was carcinogenic.  *Id.* ¶ 80.  Plaintiff asserts he would not have purchased Roundup if he had known of its carcinogenic properties.  *Id.* ¶ 82.  Plaintiff "may purchase Roundup again if he believes Roundup has been reformulated to remove or mitigate its potential risks." *Id.* ¶ 83.

In his complaint, plaintiff outlines a history of the scientific study and regulation of glyphosate, the active ingredient in Roundup.  The complaint discusses the classification by the International Agency for Research on Cancer (IARC) of glyphosate as a probable carcinogen, i*d.* ¶¶ 22–26; litigation over Roundup's advertising, i*d.* ¶¶ 30–31, 38; studies associating glyphosate with non-Hodgkins lymphoma, *id.* ¶¶ 32–37, 39; bans on glyphosate across the world, *id.* ¶¶ 40–51; and recent personal injury verdicts against Monsanto for glyphosate-related injury, *id.* ¶¶ 52–54.  The complaint references, without citing, a recent case in which another judge of this court issued an injunction against the labeling of Roundup as containing a carcinogen under California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65").  *Id.* ¶¶ 55–60.  The complaint also asserts that, although the EPA has recently found "there are no risks to human health from the current registered uses of glyphosate and that glyphosate is not likely to be carcinogenic to humans," the process by which the EPA determined this "was based on an incomplete and distorted factual record, largely due to the efforts on the part of Monsanto to conceal glyphosate's risks."  *Id.* ¶¶ 61–63.  Plaintiff alleges Monsanto engaged in a concerted effort to distort the science and conceal the risks of glyphosate.  *Id.* ¶¶ 64–75.

Plaintiff concedes Costco is not responsible for the manufacture or design of Roundup products.  *Id.* ¶ 76.  Plaintiff alleges, "Defendant was aware of the present and substantial danger to consumers while using Roundup in an intended and reasonably foreseeable way and has not alerted customers of its potential health risks."  *Id.* ¶ 78.

Based on the foregoing, plaintiff advances one claim only under the "unfair" prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. *Id.* ¶¶ 97–105; Opp'n at 11 ("Plaintiff has only asserted a claim under the 'unfair' prong of the UCL[.]").

II.   LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's

3

1  consideration of documents attached to a complaint or incorporated by reference or matter of
2  judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United*
3  *States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d
4  1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,
5  980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to
6  dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

7        III.     DISCUSSION

8        The proper test for whether a business practice is "unfair" under the UCL is
9  unsettled.  The California Supreme Court recently declined to resolve a California appellate split
10 as to the definition of "unfair" in consumer UCL actions.  *See Nationwide Biweekly Admin., Inc.*
11 *v. Sup. Ct. of Alameda Cty.*, 9 Cal. 5th 279, 303–04 (2020) (noting existence of three tests used by
12 lower courts and declining to endorse one as matter was not before court); *see also Zhang v. Sup.*
13 *Ct.*, 57 Cal. 4th 364, 380 n.9 (2013) (explaining tests).

14       Irrespective of which of the three formulations of the test for an unfair business
15 practice applies, a claim may only be asserted against a proper defendant.  Therefore, this court
16 also need not determine which test applies here.  Defendant argues the complaint should be
17 dismissed because (1) Costco did not participate in or control the alleged unlawful activities;
18 (2) plaintiff has not plausibly alleged a duty to disclose; (3) the complaint is derivative of a
19 Proposition 65 violation, but plaintiff did not comply with Proposition 65's statutory
20 requirements; and (4) the complaint should be dismissed because plaintiff lacks standing.  *See*
21 *generally* Mot.  Because the court resolves the motion on the first argument, it need not reach the
22 other three.

23       A.  Participation and Control

24       Costco asserts it cannot be held liable for a UCL violation because it did not
25 participate in or control the alleged unlawful practices.  Mot. at 5–8.  "A defendant's liability
26 must be based on his personal participation in the unlawful practices and unbridled control over
27 the practices that are found to violate sections 17200 or 17500."  *Emery v. Visa Int'l Serv. Ass'n*,
28 95 Cal. App. 4th 952, 960 (2002) (internal quotation marks, citation omitted).  "*Emery* found that

an 'unfair practices claim under section 17200 cannot be predicated on vicarious liability[.]'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*¸ 494 F. 3d 788, 808 (9th Cir. 2007) (quoting *id.*). In *In re Hydroxycut Mktg. & Sales Litig.*, another district court dismissed a complaint against a retailer for failure to allege facts showing how the retailer "participated in, controlled, or adopted as their own" representations made by the manufacturer of a deceptive nutritional supplement, or how the retailer "made their own representations regarding the Products that Plaintiffs relied on in purchasing the Products." 801 F. Supp. 2d 993, 1013 (S.D. Cal. 2011). This court previously has determined *Hydroxycut* and *Emery* stand for the proposition that "[a] retailer is not required to police each and every representation made by the products on its shelves." *McMillan v. Lowe's Home Centers, LLC*, No. 1:15-cv-00695-KJM-SMS, 2016 WL 232319, at *5 (E.D. Cal. Jan. 20, 2016) (citations omitted). In *McMillan*, the court denied a motion to dismiss on this basis, because plaintiff alleged defendant had participated directly in developing the textual and graphic content on the labels of the allegedly misleading product on its shelves. *Id.* at *6.

Plaintiff contends retailers may be liable under the UCL even if they are not the originators of the unfair practices. Opp'n at 9. In *Dorfman v. Nutramax Labs, Inc.*, No. 13cv0873 WQH (RBB), 2013 WL 5353043, at *14 (S.D. Cal. Sept. 23, 2013), another court found plaintiffs had adequately pled the retailer's participation in the unlawful practices and "unbridled control over the practices" to state a UCL claim. The complaint alleged the retailers "participated in the dissemination of the representations . . . entered into marketing and sales agreements . . . to further promote and repeat the false and deceptive statements at issue" and "make statements on their websites that repeat and reinforce the false and misleading [] statements made on the packaging and labeling." *Id.* (internal quotation marks and citations modified).

On the other hand, similar allegations were insufficient for the court to find participation in and unbridled control over unlawful practices in *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *8 (S.D. Cal. May 22, 2009). In that case, the plaintiffs' complaint alleged cellular service providers had received letters from consumers and several state Attorneys General advising them that a third-party service was engaged in wrongful billing practices that

5

1  would have shown up on consumers' cell phone bills. *Id.*  The court found these allegations
2  inadequate: "To allege, in conclusory fashion without adequate particularity, that T-Mobile knew
3  of complaints concerning deceptive marketing is insufficient to show that Wireless Providers
4  controlled, participated, approved, marketed or otherwise adopted Content Providers' advertising
5  practices." *Id.*

6  In *Adams v. Target Corp.*, yet another district court distinguished from the
7  *Hydroxycut* line of cases because the retailer had received actual notice from the Federal Trade
8  Commission that the packaging of a product on its shelves was misleading, yet the retailer
9  continued to sell the product. No. CV 13-5944-GHK (PJWx), 2014 WL 12558290, at *5 (C.D.
10  Cal. Mar. 3, 2014).  "Once it had this knowledge, it unquestionably had control over whether or
11  not to continue to sell the [ ] products.  Its decision to continue to sell the products may raise an
12  inference of participation in or adoption of the deceptive practices." *Id.*  (citing *Dorfman*, *supra*;
13  *Germain v. J.C. Penney Co.* 2009 WL 1971336, at *5 (C.D. Cal. July 6, 2009)).

14  The cases cited by both plaintiff and defendant all agree the *Emery* test applies, but
15  differ in their assessments of what allegations are adequate to meet it.  Bottom line, the complaint
16  must contain some allegation of fact to show defendant's "personal participation in the unlawful
17  practices and unbridled control" over those practices. *Emery*, 95 Cal. App. 4th at 960.  Here, the
18  complaint recites a long and contentious history of the science and legal status of glyphosate.
19  Compl. ¶¶ 22–75.  It contends the opinion currently held by the federal Environmental Protection
20  Agency ("EPA"), that glyphosate poses "no risk to human health," is the product of Monsanto's
21  campaign of distortion and concealment of the science around the chemical. *Id.* ¶¶ 62–63.

22  However, as to Costco's role, the complaint alleges only "[d]efendant was aware
23  of the present and substantial danger to consumers while using Roundup in an intended and
24  reasonably foreseeable way and has not alerted consumers of the health risks." *Id.* ¶ 78.  Even
25  extending the most favorable reading of *Adams* and *Dorfman* to assume that constructive
26  knowledge of a manufacturer's unfair practice can create an inference of participation, does not
27  save plaintiff's pleading.  The allegations relating to the history of glyphosate do not apprise the
28  reader of how knowledge of scientific studies, legislation in foreign jurisdictions, and personal

injury litigation could possibly be imputed to Costco.  Even taking as true the allegation that Monsanto is responsible for contributing to a distorted and false EPA review of glyphosate's safety, as the court must, it is impossible to tell from the allegations of the complaint how Costco would have been on constructive notice of that fact.  Because plaintiff fails to plausibly allege Costco personally participated in and exercised unbridled control over an unfair practice, the court GRANTS the motion.

      B.  <u>Leave to Amend</u>

A court should give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2).  Rule 15 of the Federal Rules of Civil Procedure evinces a preference for leave to amend that is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted).  It may be an abuse of discretion to dismiss with prejudice unless it is clear that the complaint could not be saved by amendment. *Id.* at 1052.

Because the court cannot conclude no facts exist that could support Costco's personal participation in the scheme, the court grants leave to amend.

    IV.    <u>CONCLUSION</u>

For the foregoing reasons, Costco's motion to dismiss is GRANTED.  Plaintiff may file an amended complaint within twenty-one (21) days of this order.

IT IS SO ORDERED.

DATED:  October 7, 2020.

                                CHIEF UNITED STATES DISTRICT JUDGE